UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **CONNIE J. THACKER,**<br>    **Plaintiff,**<br><br>V.<br><br>**ETHICON INC., et al.,**<br>    **Defendants.** | CIVIL NO. 5:20-cv-50-KKC-MAS<br><br><u>OPINION & ORDER</u> |

*** *** ***

This matter is before the Court on Defendants' Motion to Exclude Case-Specific Testimony and Opinions of Bruce Rosenzweig, M.D. ("Dr. Rosenzweig"). For the following reasons, Defendants' Motion (DE 298) is GRANTED IN PART, DENIED IN PART, and DEFFERRED IN PART.

## I.   BACKGROUND

Plaintiff Connie Thacker is one of tens of thousands of individuals who have filed suit against Ethicon for injuries after treatment with Ethicon's pelvic mesh devices. Thacker's case was consolidated into the Ethicon MDL in the Southern District of West Virginia. While in the MDL court, Thacker's case was placed on the inactive docket while Thacker was negotiating a settlement agreement with Ethicon. Despite these negotiations, a settlement was never reached, and Thacker's case was remanded to this Court. Because of this, the MDL court's rulings are not binding on this case. The Court, however, does find them persuasive.

After the case was remanded to this Court, Judge Hood granted summary judgment in favor of Defendants. (DE 268.) The Sixth Circuit then reversed that decision and remanded the case back to this Court for further proceedings. Defendants have now filed a motion to exclude

1

asking the Court to preclude Plaintiff's expert Dr. Bruce Rosenzweig from offering any opinions on general causation. Dr. Rosenzweig is a urogynecologist who has provided expert testimony on general causation issues in the Ethicon MDL and other pelvic mesh MDLs. (DE 297.)

Ethicon seeks to preclude Dr. Rosenzweig from: (1) offering undisclosed general causation opinions about Prolift; (2) suggesting that non-mesh surgeries are safer alternatives to TVT Secur for the treatment of stress urinary incontinence; (3) opining that a device with a different mesh, introducer, and fleece tips than the TVT Secur would be a safer alternative for treatment of stress urinary incontinence; (4) criticizing the adequacy of Ethicon's pre-market studies, adverse event reporting, and physician training; (5) opining on the sufficiency of Ethicon's warnings; (6) criticizing the manner by which the TVT Secur mesh is cut; and (7) offering opinions excluded by the MDL court.

**II.    Analysis**

Under Federal Rules of Evidence 702, an expert witness may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case.

A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999).

**A.  Testimony regarding undisclosed general causation opinions about Prolift**

Ethicon argues that since Plaintiff did not serve a Prolift report prepared by Dr. Rosenzweig, he should be precluded from offering general opinions about Prolift. Under Federal

2

Rule of Civil Procedure 26, an expert is required to provide a complete statement of all opinions they will express and the basis and reason for them. In Dr. Rosenzweig's case specific report, he states he has "reviewed, relied upon, and independently verified the Prolift expert report of Dr. Daniel Elliot in the MDL" and that he "incorporates those opinions and materials herein." (DE 300-1 at 4, 83.) Ethicon argues that Dr. Rosenzweig cannot parrot the opinions of Dr. Elliot who was not disclosed as an expert in this case because under Rule 26, the report must be *prepared* and signed by the witness.

Plaintiff, conversely, argues that under Federal Rule of Evidence 703, in reaching their opinions, experts are allowed to rely on "facts outside the record and not personally observed, but of the kind that experts in his or her field reasonably rely on in forming opinions." Plaintiff insists that there is significant overlap between Dr. Rosenzweig and Dr. Elliot's general reports which bolsters Dr. Rosenzweig's independent verification of Dr. Elliot's report.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that reports accompanying an expert witness disclosure be prepared by the witness himself or herself. Fed. R. Civ. P. 26(a)(2)(B). "[A]n expert opinion must 'set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation.'" *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (citation omitted). Further, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado by Salgado v. GMC*, 150 F.3d 735, 742 n. 6 (7th Cir.1998) (citing *Sylla—Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995)). [A]n expert's testimony may be formulated by the use of the facts, data and conclusions of other experts." *Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F. Supp. 2d 963, 976 (N.D.Ohio 2007) (internal citation omitted). However, an expert cannot merely adopt another expert's opinion completely. *Siegel v. Fisher &*

3

*Paykel Appliances Holdings Ltd.*, 3:08-CV-429-JDM, 2010 U.S. Dist. LEXIS 111578, 2010 WL 4174629, at *2 (W.D. Ky. Oct. 19, 2010). Rather, an "expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Because Dr. Rosenzweig's report does not explicitly disclose a basis for his opinions on Prolift, other than Dr. Elliot's report, he is excluded from testifying as to Prolift.

**B. Testimony on safer alternative procedures**

Defendants object to testimony in Dr. Rosenzweig's general report that the Burch procedure and autologous slings are safer alternatives to TVT Secur for the surgical treatment of stress urinary incontinence ("SUI"). Thacker concedes that the Burch procedure and autologous slings are irrelevant to her design defect theories since they are not products. However, Plaintiff argues that total exclusion at this point is premature since the evidence is likely to be relevant to other issues such as Thacker's decision to have Dr. Guiler perform the surgery in the first place.

As to testimony of alternative procedures on the design defect issue, the testimony will be excluded. As to testimony regarding alternative procedures in other contexts, the Court will defer ruling on this issue until trial when the context and content of the proposed testimony is clearer. Plaintiff should approach the bench before eliciting any such testimony.

**C. Testimony regarding TVT-Secur design alternatives**

**a. Alternative mesh**

Ethicon seeks to exclude Dr. Rosenzweig from testifying about Ultrapro mesh as an alternative design to the TVT Secur. In his general report, Dr. Rosenzweig identifies Ultrapro as a mesh that would have been a safer alternative design to the TVT Secur. Ethicon argues that neither Dr. Rosenzweig's general nor case-specific report set forth a reliable methodology to

4

demonstrate that a TVT Secur with Ultrapro or other lighter weight mesh would have been feasible at the time of Plaintiff's implant to treat SUI. To support this argument, Defendant contends that Thacker is required to demonstrate the feasibility of the alternative design and that the FDA would have cleared it for use before Thacker's implant.

The Sixth Circuit has already opined on both arguments in this case. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451 (6th Cir. 2022). As to feasibility, the Sixth Circuit found that Dr. Rosenzweig's opinion "sufficiently supported Thacker's claim that Ultrapro mesh was a feasible alternative design that was available at the time." *Id.* at 463. Contrary to Defendant's claim that there was no basis for Dr. Rosenzweig's opinion, the Sixth Circuit noted that Dr. Rosenzweig cited to several documents including internal Ethicon emails about Ultrapro when explaining why Ultrapro was a feasible alternative design. *Id.*

The Sixth Circuit also rejected Ethicon's argument that the alternative design with Ultrapro mesh required FDA approval to be considered feasible. *Id.* at 451 n.5. Now, Ethicon argues that even if the alternative design did not need FDA approval, Dr. Rosenzweig was required to demonstrate that if an application for the TVT Secur device with Ultrapro mesh had been submitted to the FDA, it would have been approved. To support this proposition, Ethicon cites to *Baksic v. Ethicon.*, a Western District of Texas case where the court granted summary judgment for the defendants because the plaintiff failed to show that a safer alternative design was feasible. 659 F. Supp. 3d 763, 775 (W.D. Tex. 2023). This holding was based in part on the plaintiff's failure to present evidence that an FDA application for the alternative design would have been approved. *Id.* Despite this, Defendants do not point to law from Kentucky or the Sixth Circuit that suggests this requirement. Accordingly, Defendants' motion is denied with respect to opinions about Ultrapro mesh.

5

### b. Opinions about the TVT Secur's introducer and tips

Next, Ethicon seeks to exclude Dr. Rosenzweig's opinion that eliminating the sharp introducer and defective fleece tips from the TVT Secur would have been safer. Ethicon argues that this opinion is irrelevant because Dr. Rosenzweig's case specific report does not include the introducer or fleece tips as a cause of Thacker's injuries. Plaintiff responds that opinions on the sharp introducer and defective fleece tips are relevant because Dr. Rosenzweig has opined that Thacker has suffered from mesh erosion and that in part her injuries are due to the "sharp edges of the mesh." (DE 300-1 at 77.)

Although Dr. Rosensweig opines that Thacker's injuries are caused in part by sharp edges of the *mesh*, his case-specific report does not include any opinions on the introducer or tips of the TVT Secur. Under Kentucky law, a plaintiff must produce evidence that would allow a jury to find that the alternative design would have prevented the plaintiff's injury. *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). Here, Dr. Rosenzweig does not opine in his case specific report that different introducers or tips would have prevented Thacker's injuries. Because of this, opinions on these alleged defects are irrelevant to Thacker's case. Accordingly, Defendants' motion as to Dr. Rosenzweig's opinions on the introducer and tips is granted.

### D. Testimony about pre-market studies, reporting, and training

Defendants seek to preclude Dr. Rosenzweig from offering testimony on the topics of testing/studies on TVT Secur, collection and reporting of adverse events, and the level of funding Ethicon provided to train physicians to use TVT Secur. Thacker does not contest the motion on these grounds and does not intend to elicit testimony from Dr. Rosenzweig regarding this evidence. Accordingly, as to these topics, Defendants' motion is granted.

### E. Opinions about adequacy of warnings

Defendants argue that since Dr. Rosenzweig is not a warnings expert, he should not be allowed to testify about warnings in the TVT-S and Prolift Instructions for Use ("IFU"). Instead, they contend that his testimony should be limited to the specific risks of implanting mesh and whether those risks appeared on the IFU. Conversely, Thacker contends that Dr. Rosenzweig's extensive experience as a pelvic surgeon qualifies him to testify about the adequacy of warnings.

The Court agrees with the MDL court and other courts that have allowed Dr. Rosenzweig to testify about the risks of implantation and whether he believes Ethicon's IFU adequately warned Plaintiff of those risks. *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 704 (S.D.W. Va. 2014) (finding that Dr. Rosenzweig is "qualified to testify generally on the adequacy of the [] product warnings and marketing material."); *Sexton v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 172021, at * 22 (E.D. Ky. Sept. 10, 2021); *Edwards v. Ethicon, Inc.*, No. 2:12-cv-09972, 2014 U.S. Dist. LEXIS 92316, 2014 WL 3361923, at *8 (S.D. W. Va. July 8, 2014); *Bell v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 54419, 2021 WL 1111071, at *7 (S.D. Tex. Mar. 23, 2021). Those courts have found that Dr. Rosenzweig is not only qualified through his experience as a urogynecologist but also through his experience consulting on product warnings, serving on advisory committees, and reviewing IFUs for mesh products. Accordingly, Ethicon's motion will be denied in part, insofar as it pertains to Dr. Rosenzweig's opinions regarding the adequacy of Ethicon's warnings.

**F.  Opinions criticizing the way the mesh in TVT Secur was cut**

Next, Ethicon moves to exclude Dr. Rosenzweig from criticizing the way the mesh in the TVT Secur was cut. There are two ways TVT strips can be cut: mechanically or with a laser. In the past, Dr. Rosenzweig has opined that laser-cut mesh is too stiff and mechanically cut mesh can rope, curl, and fray. Ethicon argues that Dr. Rosenzweig should not be able to opine that

7

mechanically cut mesh is safer than laser cut mesh since he has opined that the mesh is unsafe either way. Defendants also contend that opinions criticizing the cutting method are irrelevant because no expert has opined that Thacker's injuries were caused by the cut of the mesh or that a different mesh cut would have been a safer alternative design. Additionally, Ethicon argues that mechanically cut TVT Secur mesh was not an available option at the time of Thacker's implant. Plaintiff maintains that Dr. Rosenzweig's opinions are relevant because in his case-specific report he opines that Thacker's injuries are due in part to stiffness and rigidity of the TVT Secur device.

In his general causation report, Dr. Rosenzweig opined that the rigidity of laser cut mesh can cause a higher incidence of erosion and sexual dysfunction than mechanically cut mesh. He also cites Ethicon's internal communications noting that laser cut mesh was about three times stiffer than machine cut mesh. In his specific causation report, Dr. Rosenzweig does not directly state that Thacker's injuries were caused by the cut of the mesh. He does, however, opine that her injuries were caused in part by the stiffness and rigidity of the TVT Secur. Based on this, the jury could make an inference that Thacker's injuries were due in part to the laser cut mesh. Accordingly, the testimony is relevant to Thacker's case. Any inconsistencies in Dr. Rosenzweig' opinions in the past are grounds for cross-examination rather than exclusion.

As to the unavailability of mechanically cut mesh at the time of Thacker's procedure, Defendants have not pointed to anything in the record to support that claim. Nor has the Court been able to locate anything that suggests mechanically cut mesh was unavailable at the time. Courts that Ethicon has made this argument in front of in the past have not granted the motion on these grounds. *See Henrich v. Ethicon, Inc*., 2021 WL 2290996 at *4 (D. Nev. June 4, 2021). The Court therefore denies this portion of the Defendants' motion.

**E. Opinions previously excluded in the MDL court**

8

Defendants seek to preclude Dr. Rosenzweig from offering opinions that the MDL court excluded. Thacker responds by construing the motion as seeking to exclude state of mind opinions and legal conclusion opinions. Thacker agrees to not elicit any such testimony from Dr. Rosenzweig. Accordingly, as to these topics, Defendants' motion is granted.

### III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' motion to exclude (DE 298) is granted in part, denied in part, and deferred in part;
2. Dr. Rosenzweig shall not testify about Prolift;
3. Dr. Rosenzweig shall not testify about alternative procedures as to the design defect issue;
4. The Court defers a ruling on the motion to exclude testimony about alternative procedures in other contexts;
5. Dr. Rosenzweig may testify about Ultrapro mesh;
6. Dr. Rosenzweig shall not testify about the TVT Secur's introducer and tips;
7. Dr. Rosenzweig shall not testify about pre-market studies, reporting, and training;
8. Dr. Rosenzweig may testify about the adequacy of warnings;
9. Dr. Rosenzweig may testify about the way the mesh was cut;
10. Dr. Rosenzweig shall not offer testimony regarding state of mind or legal conclusions.

This 27th day of August, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY