UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **CONNIE J. THACKER,** | **CIVIL ACTION NO. 5:20-cv-50-KKC** |
| **Plaintiff,** | |
| V. | **OPINION & ORDER** |
| **ETHICON INC., et al.,** | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the Defendants' motion to exclude or limit certain opinions and testimony of plaintiff Connie Thacker's expert, Anne Wilson, MBA. (DE 163.)

## I. Factual Background

The factual background for this matter is set forth in detail in the Court's opinion and order entered on July 8, 2025. (DE 307.) This opinion addresses the Defendants' motion asking the Court to preclude plaintiff expert Anne Wilson from offering testimony on certain subjects. Wilson is a biomedical engineer and quality assurance consultant, holding certifications as a Quality Auditor and Quality Engineer. Wilson has been designated as an expert in the field of compliance with quality and risk management standards. She is expected to testify that Ethicon failed to meet the "industry standards" for design control processes and risk management.

## II. Analysis

Under Federal Rules of Evidence 702, an expert witness may testify if

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

1

> product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d).

A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999). The Defendants argue that Wilson's testimony should be (1) excluded entirely because it is unreliable, or (2) limited on certain subjects.

### a. Reliability of Wilson's testimony

The Defendants argue that Wilson's testimony should be excluded entirely because it is unreliable. Namely, the Defendants take issue with Wilson's methodology. The Supreme Court has said that "[t]he objective of [the *Daubert* gatekeeping] requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). As a result, *Daubert* and its progeny require experts to base their opinions on sufficient methodologies to render their testimony reliable.

The Defendants argue that Wilson's methodology is insufficient because she (1) should have conducted an audit of Ethicon's systems; (2) failed to consider applicable U.S. standards while inappropriately basing her "industry standards" testimony on inapplicable European standards; and (3) failed to review all relevant case materials in reaching her conclusions.

### i. Failure to audit

Wilson did not have to conduct an audit of Ethicon's systems—as the Defendants suggest—to render her methodology reliable. As Wilson explains in her report, her role in

2

this case involves "address[ing] the design control and risk management processes of Ethicon[.]" (DE 163-1 at Page ID# 4081.) One method that *could* be used to address such processes is an audit. But the Defendants do not explain, or offer any authority to explain, how conducting an audit is the *only* reliable methodology available for reviewing the processes Wilson has been asked to review. To the contrary, the methodology Wilson used to arrive at her opinions, which involved reviewing Ethicon's design and risk control documents and evaluating them within the framework of industry standards, is plainly based on "sufficient facts," and "reliable principles and methods." Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a factual basis, it should not be excluded [because] it is up to opposing counsel to inquire into the expert's factual basis.").

### ii. Failure to review appropriate industry standards

The Court will now turn its attention to the Defendants' chief objection to Wilson's testimony—that being the contention that her testimony on "industry standards" is based on wrong or incomplete standards. The Defendants argue that (1) Wilson should not have consulted standards set by the International Organization for Standardization; and (2) she should have consulted applicable FDA regulations in offering testimony on Ethicon's compliance with "industry standards." Essentially, the Defendants argue that Wilson's testimony is unreliable because she bases her "industry standards" testimony on an incomplete picture of what makes up the universe of "industry standards" for her field of expertise. As explained below, however, this is incorrect, and Wilson's testimony is not based on an unreliable methodology.

No party disputes that particular FDA regulations make up a portion of the universe of "industry standards" for design control and risk management processes in the medical

3

device manufacturing industry. The Defendants argue that standards set by the International Organization for Standardization (which are referred to as "ISOs"), however, are not a part of that same universe. (DE 163 at 6.) Wilson's report states the opposite—explaining that ISOs were "[t]he primary standards applicable" to Ethicon's quality and risk management systems at the time Ethicon developed the at-issue devices. (DE 163-1 at Page ID# 4083.) She also explained during her deposition that applicable ISOs and FDA regulations are very similar. (DE 163-2, Wilson Depo., at Page ID# 4111.)

To the extent that the Defendants have evidence to refute Wilson's conclusion that ISOs were "[t]he primary standards applicable," they may confront her with it through "vigorous cross-examination," at trial. But the Defendants objection is not sufficient to render her testimony unreliable at this stage. *Daubert,* 509 U.S. at 596. This conclusion is reinforced by the Defendants failure to offer any evidence or authority stating that ISOs are irrelevant to medical device manufacturers in the United States. *Contra Cisson v. C.R. Bard, Inc.*, No. 2:11-cv-00195 2013 U.S. Dist. LEXIS 149976, at *36 (S.D. W.V. Oct. 18, 2013) ("evidence of [a manufacturer's] compliance with ISO standards is relevant.").

Moreover, Wilson's failure to consider applicable FDA regulations during her review of this case does not render her testimony unreliable. To be clear, Wilson admits that she did not consider applicable FDA regulations and rather only considered applicable ISOs.[1] But this failure does not, in and of itself, render her methodology and testimony unreliable. This is because Wilson plainly opines that ISOs were "[t]he primary standards applicable" to Ethicon's quality and risk management systems. (DE 163-1 at Page ID# 4083.) Again, to the extent the Defendants have evidence to the contrary, they may address that during Wilson's

---

[1] Wilson's failure to consider applicable FDA regulations makes good sense, as she was apparently told by counsel that FDA considerations were "not within the scope of," her expert testimony. (DE 163-2, Wilson Depo., at Page ID# 4117.)

cross-examination. Otherwise, because ISOs provide "appropriate validation" for her testimony on Ethicon's compliance with industry standards, the Court finds Wilson's "industry standards" testimony reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Daubert,* 509 U.S. at 590) ("[T]he requirement that an expert's testimony be reliable means that it must be 'supported by appropriate validation—i.e., "good grounds," based on what is known.'").

This brings the Court to its next point with respect to the Defendants' argument on Wilson's "industry standards" testimony. Here, no party has pointed to a binding decision from the MDL Court ordering a blanket exclusion on all FDA related evidence. Rather, the Court has only the parties' stipulation, which speaks to the admissibility of **specific** classes of FDA evidence. (DE 295.) The scope of that stipulation is narrow rather than all-encompassing. As a result, the Court finds that nothing at this stage prevents the Defendants from appropriately questioning Wilson on the subject of FDA regulation compliance on cross-examination, that is, to the extent such questions are within the scope of Wilson's "industry standards" testimony addressed during her direct examination. This result also resolves any "unfair prejudice" the Defendants suggest they would experience if Wilson were allowed to opine on relevant ISOs. (DE 163 at 6.)

Before proceeding, the Court pauses to address the scope of this ruling. Wilson's testimony may be offered to help define the contours of the duty of care for her common law negligence claim (and for other relevant purposes). But such testimony shall not equate compliance or non-compliance with satisfaction or dereliction of the duty of care. *See Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997) (explaining that under Kentucky law, regulations define the duty of care in only negligence per se cases). Should the presentation of evidence or arguments by counsel cross that line, the Court will instruct the jury that the standards discussed help define the duty of care, but that compliance or non-

5

compliance with such standards is not conclusive evidence that the Defendants satisfied or breached the duty of reasonable care.

### iii. Failure to review all case materials

The Defendants also argue that Wilson's methodology is unreliable because she limited her review of case materials when drafting her report. For example, the Defendants allege that Wilson failed to review several "risk analyses . . . [that] did not fit her strict concept of risk analysis being only in the format of an FMEA [Failure Mode and Effects Analysis]." (DE 163 at 12.) According to the Defendants, those analyses, along with other internal Ethicon documents that Wilson did not review, prove that Ethicon properly evaluated risks—a conclusion Wilson disagrees with.

Ultimately, the concerns cited by the Defendants reflect the weight of the evidence, which can be thoroughly evaluated by the jury and challenged on cross-examination. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012). As recognized by the MDL Court, "[n]othing in *Daubert* . . . requires an expert to consider every single article [or document] on a topic." *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2187, 2018 WL 4220616, at *5 (S.D. W. Va. Sept. 5, 2018). Accordingly, the Court declines to exclude Wilson for failing to address specific internal Ethicon documents.

Based on the foregoing, the Court concludes that both Wilson's methodology and testimony are reliable.

### b. Wilson's medical opinions

The Defendants also take issue with specific portions of Wilson's testimony. The Defendants first contend that Wilson inappropriately offers "medical opinions" throughout her report. The Defendants do not specify which of Wilson's opinions are "medical opinions" but rather just cite a page range of Wilson's report which they argue is "replete" with such opinions. In response, Thacker argues that Wilson's report contains no medical opinions.

6

Without more specific objections, the Court declines to conduct a line-by-line analysis of the page range cited to determine which of Wilson's opinions are medical opinions. However, the Court does agree that medical opinions are beyond the scope of Wilson's qualifications and should be excluded.

Accordingly, the Defendants' motion is granted insofar as Wilson will be precluded from offering medical opinions. The Defendants may assert specific objections to Wilson's testimony at trial where the Court will have the benefit of context.

### c. Wilson's testimony regarding warning information in the risk management process

The Defendants finally argue that Wilson's testimony regarding Ethicon's Instructions for Use ("IFU") on the TVT-S device should be excluded. Specifically, the Defendants argue that Wilson is unqualified to offer testimony on IFUs. Wilson is expected to testify that Ethicon's failure to adequately address certain risks in the TVT-S's IFU was "a violation of industry practices and international standards." (DE 223-1 at Page ID# 9427.)

The parties seem to agree that issues with IFUs relate to risk assessment in the general sense. And the Defendants do not challenge Wilson's qualifications to testify as an expert on risk assessment. Accordingly, it is apparent to the Court that testimony concerning IFUs directly relates to Wilson's area of expertise. The Court recognizes that just because Wilson is an expert in one area "does not *ipso facto* qualify [her] to testify as an expert in all related areas." *Travelers Prop. Cas. Ins. Co. v. R-Tek Insulation, Inc.*, 673 F. Supp. 3d 879, 866 (N.D. Ohio 2023) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001)). But ultimately, Rule 702 "takes a liberal approach to expert witness qualification," in that the "degree of 'knowledge, skill, experience, training, or education' sufficient to qualify an expert witness is only that necessary to ensure that the witness's testimony 'assist' the trier of fact . . . to any degree." 29 Charles Alan Wright *et al.*, *Fed. Prac.*

7

*& Proc. Evid.* § 6265 (1997). As such, the Court finds that Wilson's familiarity with risk assessment processes in the medical device manufacturing context provides her with sufficient knowledge on IFUs to assist the trier of fact to at least some degree. Wilson is therefore qualified to offer opinions regarding product warnings as a fundamental part of the risk management process in the medical device industry.

### III.  Conclusion

Based on the foregoing, it is hereby ORDERED that the Defendants' motion to exclude or limit certain opinions and testimony of plaintiff Connie Thacker's expert, Anne Wilson, MBA (DE 163) is GRANTED in part and DENIED in part as follows:

(1) The motion is GRANTED insofar as Anne Wilson SHALL NOT offer testimony expressing any medical opinions; and

(2) The motion is otherwise DENIED.

This 21st day of July, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

8