UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **CONNIE J. THACKER,**  **Plaintiff,**  V.  **ETHICON INC., et al.,**  **Defendants.** | CIVIL ACTION NO. 5:20-cv-50-KKC  **OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' motion to exclude or limit certain opinions and testimony of plaintiff Connie Thacker's expert, Uwe Klinge, M.D. (DE 164.) For the following reasons, the motion is granted in part and denied in part.

I. **Factual Background**

The factual background for this matter is set forth in detail in the Court's opinion and order entered on July 8, 2025. (DE 307.) This opinion addresses the Defendants' motion asking the Court to preclude plaintiff expert Dr. Uwe Klinge from offering testimony on certain subjects. Dr. Klinge is a former abdominal surgeon who has also spent much of his career researching the area of biomaterial science. In fact, he spent years as an Ethicon consultant—providing insight on biomaterials research and surgical mesh designs. Thacker has identified Dr. Klinge as an expert to offer general opinions on Ethicon's mesh devices.

Dr. Klinge submitted two reports for this litigation. In one report, referred to as the "SUI report," Dr. Klinge opines on Ethicon's TVT Secur ("TVT-S") device. In the other report, referred to as the "POP report," Dr. Klinge offers testimony on Ethicon's Prolift device.

1

**II.     Analysis**

Under Federal Rules of Evidence 702, an expert witness may testify if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d).

A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Here, the Defendants challenge specific portions of Dr. Klinge's testimony, including (1) his testimony on alternative designs; (2) his testimony on fraying and particle loss; and (3) any testimony concerning Ethicon's knowledge, state of mind, and corporate knowledge.

### a. Dr. Klinge's testimony regarding alternative designs

The Defendants first argue that Dr. Klinge's alternative design testimony should be excluded. In his SUI Report, Dr. Klinge identifies two alternative designs for Ethicon's TVT-S device: (1) a device made from Ultrapro mesh, and (2) a device made from polyvinylidene fluoride ("PVDF") mesh. In his POP report, Dr. Klinge identifies only one alternative design for Ethicon's Prolift device: PVDF mesh. For the following reasons, Dr. Klinge's testimony on both Ultrapro mesh and PVDF mesh must be excluded.

### i. Whether the alternative designs fit the facts of the case.

The Defendants argue that Klinge's alternative design opinions should be excluded because they "do not fit the facts of the case" and therefore would not help the trier of fact. (DE 164 at 2.) The "relevancy" prong of Rule 702 requires that an expert's theory adequately "fit" the facts of the case. *See Daubert*, 509 U.S. at 591. Expert testimony that does not fit the facts does not relate to an issue in the case and, therefore, is not relevant. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Generally speaking, testimony on alternative designs is a relevant topic in this case. But for a general expert's testimony, like Dr. Klinge's, on a particular alternative design to be relevant, there must be a case-specific expert that also testifies that the particular alternative design would have prevented Thacker's injuries. This is because, "in Kentucky, in order to prove a product is 'unreasonably dangerous' as designed, a plaintiff is required to produce competent evidence 'of a feasible alternative design' that **would have prevented the injury**." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 375 (W.D. Ky. 2012) (quoting *Cummins v. BIC USA, Inc.*, 835 F. Supp. 2d 322, 326 (W.D. Ky. 2011)) (emphasis added).

To put it another way, Dr. Klinge cannot testify that any alternative design would have prevented Thacker's injuries because he has only been designated as a general expert. As such, his alternative design opinions do not fit the facts of this case unless a case-specific expert first testifies that (1) the Ultrapro mesh, and/or (2) the PVDF mesh would have prevented Thacker's injuries.

To that end, Thacker has identified Dr. Bruce Rosenzweig as her case-specific causation expert. Dr. Rosenzweig has been permitted by prior order of this Court to offer testimony on Ultrapro mesh as an alternative design. (DE 302.) Dr. Rosenzweig, however, does not offer any opinions on PVDF mesh. Juxtaposed to another, it becomes apparent why Dr. Klinge's testimony on Ultrapro mesh fits the facts of this case but his testimony on PVDF mesh does not. Simply put, Dr. Klinge's testimony on Ultrapro mesh fits the facts of this case because Dr. Rosenzweig is expected to testify that use of that mesh would have prevented Thacker's injuries. His testimony on PVDF mesh, however, does not fit the facts of this case because there is no competent testimony expected which concludes that use of PVDF mesh would have prevented Thacker's injuries.

3

Accordingly, the Court will proceed with other arguments made regarding the admissibility of Dr. Klinge's testimony on the Ultrapro mesh, but it will exclude Dr. Klinge's testimony on PVDF mesh as irrelevant.

### ii. Whether Dr. Klinge's testimony on Ultrapro mesh is reliable.

The Defendants argue in the alternative that Dr. Klinge's testimony on Ultrapro mesh is unreliable. Specifically, they argue that it is unreliable because he did not conduct any testing on Ultrapro or identify any peer-reviewed literature which supports the safety of Ultrapro. (DE 164 at 6.) "[T]he requirement that an expert's testimony be reliable means that it must be 'supported by appropriate validation—i.e., "good grounds," based on what is known.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Daubert,* 509 U.S. at 590). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529–30 (citing Fed. R. Evid. 702).

Here, in the section of his report specifically addressing alternative designs, Dr. Klinge simply states that one safer alternative design for Ethicon's TVT-S device "would be a mesh product with less material and larger distance between the mesh fibers (Ethicon's Ultrapro mesh has 3-5mm between the fibers and has a weight of 25 g/m2)." (DE 164-1 at Page ID# 5192.) Dr. Klinge, however, fails to cite *any* testing or peer-reviewed studies to support his opinion. In fact, Dr. Klinge cites nothing at all to support his opinion. Rather, after concluding that Ultrapro is a safer alternative design, he proceeds directly to his opinion that PVDF mesh is "[a]nother safer design." (*Id.*)[1]

---

[1] In contrast, Dr. Klinge's opinion regarding the safety and efficacy of PVDF mesh as an alternative design is well supported by citation to scientific literature.

4

In her response, Thacker argues that Dr. Klinge's Ultrapro testimony is reliable on two bases. First, Thacker argues that Dr. Klinge's Ultrapro testimony is supported by his reliance on internal Ethicon documents showing that Ethicon attempted to develop a large-pore mesh during its design of the TVT-S device. While true that Dr. Klinge describes Ethicon's attempts to develop lighter weight, large pore meshes and the reasons for doing so in his report, the Court fails to see how that renders reliable his testimony that a specific large pore mesh—Ultrapro—is a safer alternative design. As the MDL Court recognized when addressing the reliability of Dr. Klinge's testimony on PVDF mesh as an alternative design, "internal Ethicon documents . . . are not sufficiently reliable scientific bases under *Daubert*." *Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 12685965, at *9 (S.D.W. Va. Nov. 20, 2014). The Court finds that reasoning persuasive and therefore concludes the same.

Second, Thacker argues that Dr. Klinge's Ultrapro testimony is supported by his reliance on a Turkish study on Ultrapro that he identified and discussed during his deposition. She suggests that the study provides ample basis for Dr. Klinge's testimony because it concluded that "Ultrapro mesh can be used in sling surgery due to its higher success rates, and its lower vaginal and urethral extrusion and de novo urgency rates, which have also been shown in clinical studies." (DE 220 at 6.) This study, however, does not render Dr. Klinge's Ultrapro testimony reliable for two reasons.

For one, Dr. Klinge neither mentions nor discusses the Turkish study in his expert report. And allowing him to provide the basis and reasons for his Ultrapro testimony during his deposition rather than in his report would usurp the requirements and role of Rule 26. Fed. R. Civ P. 26(a)(2)(B)(i) (providing that an expert's report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them.).

Second, the Turkish study is largely inapposite to the current case. This is because the authors of that study used a completely different surgical technique—described as a

5

"double-forced sling"—than the one at issue. And the MDL Court has repeatedly explained that a different device requiring a different surgery cannot be a safer alternative design. *See Mullins v. Johnson & Johnson*, 236 F. Supp. 3d 940, 943 (S.D.W. Va. 2017) (explaining that alternative procedures are not alternative designs because they "do not inform the jury on *how* the [device's] design could have feasibly been made safer to eliminate the risks that caused the plaintiff's injuries.") (emphasis in original). The Court finds the MDL Court's reasoning persuasive. As such, the Court finds that the Turkish study does not provide a sufficiently reliable scientific basis for Dr. Klinge's Ultrapro testimony.

Based on the foregoing, the Court will exclude Dr. Klinge's Ultrapro testimony because he fails to provide "appropriate validation" for his opinions. *Daubert,* 509 U.S. at 590.

### b. Dr. Klinge's testimony regarding fraying and particle loss

The Defendants next challenge Dr. Klinge's testimony that the Prolene Soft mesh used is Ethicon's Prolift device frays and loses particles. The Defendants argue that Dr. Klinge's testimony on this topic is unreliable because the facts and data he cites for support pertain to the Prolene mesh used in Ethicon's TVT-S device—which is an entirely different material than Prolene Soft mesh. According to the Defendants, Prolene and Prolene Soft have different pore sizes and weights that might affect this analysis.

While the Defendants argue that the differences between Prolene and Prolene Soft *may* affect Dr. Klinge's analysis on fraying and particle loss, the parties have not provided the Court with sufficient information to judge the validity of this distinction. Accordingly, without more, the Court hesitates to find that Dr. Klinge does not provide "appropriate validation" for his opinions. *Daubert,* 509 U.S. at 590. Dr. Klinge will therefore be permitted to testify on fraying and particle loss with respect to Prolene Soft mesh. To the extent the Defendants have evidence that the distinction between Prolene and Prolene Soft is of critical importance to this testimony, they may renew their objection at trial. Otherwise, they may

handle the issue through "[v]igorous cross-examination," and "presentation of contrary evidence." *Id.* at 596.

### c. Testimony concerning Ethicon's knowledge, state of mind, and corporate conduct

The Defendants finally request that Dr. Klinge be precluded from testifying to Ethicon's knowledge, state of mind, and corporate conduct. Thacker does not oppose the request—explaining that she "will not elicit testimony from Dr. Klinge regarding Ethicon's knowledge, state of mind, or corporate conduct." (DE 220 at 12.) The request is therefore granted.

### III. Conclusion

Based on the foregoing, it is hereby ORDERED that the

(1) The Defendants' motion to exclude or limit certain opinions and testimony of plaintiff Connie Thacker's expert, Uwe Klinge, M.D. (DE 164) is GRANTED in part and DENIED in part;

(2) Dr. Klinge SHALL NOT testify on Ultrapro mesh or PVDF mesh;

(3) Dr. Klinge SHALL be permitted to testify about fraying and particle loss with respect to Prolene Soft mesh; and

(4) Dr. Klinge SHALL NOT offer opinions concerning Ethicon's knowledge, state of mind, and corporate conduct.

July 29, 2025



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY