UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **CONNIE J. THACKER,**<br>    **Plaintiff,**<br><br>V.<br><br>**ETHICON INC., et al.,**<br>    **Defendants.** | CIVIL ACTION NO. 5:20-cv-50-KKC<br><br><br>**OPINION & ORDER** |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the Defendants' motion to exclude or limit certain opinions and testimony of plaintiff Connie Thacker's expert, Elizabeth Laposata, M.D. (DE 165.) For the following reasons, the motion is denied.

## I.    Factual Background

The factual background for this matter is set forth in detail in the Court's opinion and order entered on July 8, 2025. (DE 307.) This opinion addresses the Defendants' motion asking the Court to preclude plaintiff expert Dr. Elizabeth Laposata from offering testimony on certain subjects. Dr. Laposata is a board-certified pathologist. Thacker has identified Dr. Laposata as a case-specific expert.

## II.    Analysis

Under Federal Rules of Evidence 702, an expert witness may testify if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d).

1

A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Here, the Defendants challenge specific portions of Dr. Laposata's testimony, including (1) her testimony relating to general principles of tissue reactions to mesh; (2) her testimony on changes in the mesh after implantation; (3) her testimony on pain and suffering; and (4) her testimony that Thacker experienced certain complications.

### a. Whether Dr. Laposata offers impermissible general testimony.

The Defendants argue that Dr. Laposata's general opinions go beyond her designation as a case-specific expert and should be excluded on that basis. Further, they argue that Dr. Laposata's general opinions as to some "changes" in the mesh that she believes can occur—including bridging, encapsulation, erosion, extrusion, etc.—and the symptoms that can be caused by these changes are not relevant to her analysis of Thacker's case as these changes and symptoms were not experienced by Thacker.

The Defendants raised this exact argument in *Meade v. Ethicon, Inc.*, No. 4:20–cv–00694, 2020 WL 6395814 (E.D. Ark. November 2, 2020). In *Meade*, the district court ultimately allowed Dr. Laposata's testimony. *Id*. at 8. The court's opinion acknowledged that while "Dr. Laposata does not hold herself out as a general causation expert," her report does include "some general background on the basic science and pathology of tissue reaction to foreign biomaterials[.]" *Id*. The same is true here. However, the court permitted the testimony because "Dr. Laposata provides this general information [only to show] how this information correlates with physical symptoms of the sort [the plaintiff] experienced and to provide a basis upon which her case-specific opinions are founded." *Id*. The Court finds the court's reasoning in *Meade* persuasive and therefore adopts it as its own here. Accordingly, like the

2

court in *Meade*, the Court finds that Dr. Laposata's opinions accord with her role as a case-specific expert, and those case-specific opinions are admissible pursuant to Rule 702.

### b. Whether Dr. Laposata is qualified to opine on changes in the mesh after implantation.

The Defendants next argue that Dr. Laposata is unqualified to opine on changes that occur in the mesh of the TVT Secur and Prolift devices after implantation. For support, the Defendants cite Dr. Laposata's deposition testimony from 2014 from a case in which she served as an expert. In that testimony, the Defendants suggest that Dr. Laposata "admitted that she is not an expert in mesh degradation." (DE 165 at 4.) Thus, the Defendants assert that Dr. Laposata's opinions regarding mesh degradation are outside her area of expertise and that she lacks any specialized knowledge about mesh degradation.

Again, this exact issue was dealt with by the district court in *Meade*, and the Court again finds its reasoning and disposition persuasive. The court in *Meade* found that Dr. Laposata was qualified to opine on mesh degradation and other changes that may occur in the mesh of the TVT Secur and Prolift devices. *Meade*, 2020 WL 6395814, at *8. The court reasoned that

> Dr. Laposata's work, training, and the literature for her field qualify her to opine on the possibly degraded mesh in bodily tissue and the properties of that mesh. Dr. Laposata studies and works with the interaction between implanted materials and human tissue, and the Court considers Dr. Laposata's opinions on this issue admissible pursuant to Rule 702.

*Id*. In addition, the Court notes here that an expert's statement as to their own qualifications, taken out of context, are not controlling on the *Daubert* analysis. Rather, the Court looks to the nature of the expert's credentials, experience, and review of the relevant literature to make that determination. Here, Dr. Laposata is qualified to opine on mesh degradation based on those considerations as well as her continued education since making that statement in 2014—which Thacker describes as including reviewing additional and updated medical

3

literature. *See Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 553–57 (S.D.W. Va. 2014), as amended (Oct. 29, 2014) (an expert who further familiarizes himself can so accordingly expand his area of expertise).

Based on the foregoing, the Court finds that Dr. Laposata is qualified to opine on changes in the mesh after implantation.

### c. Whether Dr. Laposata is qualified to opine on pain and suffering.

The Defendants next suggest that Dr. Laposata is not qualified to opine on Thacker's pain and suffering. She is expected to testify that "the complications and injuries suffered by Ms. Thacker, including pelvic pain, vaginal pain, and dyspareunia . . . were a result of the mesh." (DE 165 at 4.) The Defendants argue that Dr. Laposata is not qualified to offer that opinion because she has no clinical experience nor does she treat living patients for pain.

Once more, the Court finds persuasive the reasoning of the district court in *Meade* when it was faced with a nearly identical argument. In that case, Ethicon argued that Dr. Laposata was unqualified to offer opinions on pain and suffering because "she does not treat or otherwise manage pain of living patients." *Meade*, 2020 WL 6395814, at *8. The court permitted Dr. Laposata's testimony on the plaintiff's pain and suffering, explaining that her credentials and experiences qualified her as an expert on the issue:

> [T]he Court considers it within the expertise of a pathologist to opine as to pain. Dr. Laposata studies human tissue and determines cause of injuries and diseases, and Dr. Laposata both works as a pathologist and teaches medical students in a diagnostic lab.

*Id*. The Court concurs and finds that Dr. Laposata's credentials and experiences qualify her to offer testimony on Thacker's pain and suffering. *See also In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 621 (S.D.W. Va. 2013) (finding that an expert's "very job as a pathologist" qualified him to opine on the "cause of the pain, contraction, and other problems that the bellwether plaintiffs experience.").

4

### d. Whether Dr. Laposata's failure to use a control renders her testimony on complications Thacker experienced unreliable.

The Defendants finally argue that Dr. Laposata's testimony on complications Thacker experienced is unreliable because her methodology did not involve the use of a "control." (DE 165 at 5.) They explain that part of Dr. Laposata's methodology involved reviewing tissue slides of a mesh explant taken from Thacker but that she did not review tissue slides from an explant of an asymptomatic patient (i.e., a set of "control" slides). The Defendants argue that Dr. Laposata's review of Thacker's slides cannot yield any meaningful data if she did not compare her observations with a control.

For support, the Defendants cite the MDL court's opinion in *In re: Ethicon, Inc.*, 2016 WL 4582228, at *4 (S.D. W. Va. Sept. 1, 2016). There, the MDL court determined that "[w]ithout a proper control, [the expert pathologist's] opinions correlating specific complications with samples of explanted mesh products do not provide a sufficiently reliable methodology." *Id*. The Court notes that the MDL court's decision is not binding on it, and it ultimately disagrees with that decision. To be deemed reliable under *Daubert*, Dr. Laposata's testimony on the complications Thacker experienced need only be "supported by appropriate validation." *Daubert,* 509 U.S. at 590. Here, her firsthand review of tissue slides of a mesh explant taken from Thacker provides "appropriate validation" for her testimony. Accordingly, the Court finds that Dr. Laposata's testimony on complications Thacker experienced is reliable. The concern cited by the Defendants reflects the weight of the evidence, which can be thoroughly evaluated by the jury and challenged on cross-examination. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012).

### III. Conclusion

For the foregoing reasons, it is hereby ORDERED that the Defendants' motion (DE 165) is DENIED.

5

This 11th day of August, 2025.

                                                  KAREN K. CALDWELL
                                                  UNITED STATES DISTRICT JUDGE
                                                  EASTERN DISTRICT OF KENTUCKY